UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN PATRICK ADKINS,

    Plaintiff,

v.                                      Case No: 6:16-cv-754-Orl-31TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff John Patrick Adkins appeals to this Court from Defendant the Commissioner of Social Security's final decision to deny his applications for disability insurance benefits and supplemental security income. I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, and the joint memorandum submitted by the parties. For the following reasons, I respectfully recommend that the Commissioner's final decision be **reversed** and the case be **remanded**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background[1]

When the Commissioner issued her administrative decision, Plaintiff was fifty-five years old and had completed the eighth grade (Tr. 104, 352). He originally applied for benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 416, 423 on August 17, 2007, alleging a disability onset date of May 2, 2007 (Tr. 318-329, 343). Plaintiff's claims were denied at the initial level (on November 16, 2007) and on reconsideration (on May 21, 2008) (Tr. 144-149, 151-154). At Plaintiff's request, an ALJ

---

[1] The information in this section comes from the parties' joint memorandum filed on February 9, 2017 (Doc. 23).

conducted a hearing on July 22, 2009 (Tr. 101-119, 159, 800-817). The ALJ issued an unfavorable decision on August 17, 2009 (Tr. 128-139). Then, on January 6, 2011, the Appeals Council remanded the case for further administrative proceedings (Tr. 140-143).

A second hearing before a different ALJ was held on March 15, 2012 (Tr. 30-100, 734-790, 792-798). On April 24, 2012, the second ALJ issued another unfavorable decision (Tr. 7-28, 818-833). On September 14, 2013, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).

Plaintiff appealed the Commissioner's April 24, 2012 decision to this Court. See (Case No. 6:13-cv-1712-GAP-DAB). The Commissioner subsequently filed an unopposed motion to remand the case for further administrative proceedings (Id., Doc. 15). On March 31, 2014, the district judge granted the motion, reversed the Commissioner's decision, and remanded the case for further administrative proceedings (Id., Doc. 15).

On October 29, 2013, (while his appeal was pending at the administrative level) Plaintiff filed a new application for disability and supplemental security income benefits. This new application was denied at the initial level (on January 24, 2014) and on reconsideration (on April 7, 2014) (Tr. 908-913, 918-927). Plaintiff requested a hearing before an ALJ, and on July 8, 2014, while his request was pending, the Appeals Council remanded the original application back to the ALJ for further proceedings (Tr. 903-907). The Appeals Council also ordered the ALJ to consolidate both applications, "create a single electronic record, and issue a new decision on the consolidated claims" (Tr. 906).

After the cases were consolidated, a third administrative hearing was held on February 9, 2016 (Tr. 677-725). On March 2, 2016, the ALJ issued a partially favorable decision finding that Plaintiff became disabled on May 27, 2015, but that he was not disabled prior to that date (Tr. 643-665). The ALJ's March 2nd decision is the

Commissioner's final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted his administrative remedies and his case is ripe for review.

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The evaluation process requires the ALJ to determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 649). At step two, the ALJ found that Plaintiff was severely impaired by: lumbar and cervical degenerative disc disease and borderline intellectual functioning (Tr. 650). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing") (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 650-654). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), subject to certain limitations (Tr. 655-662). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 662-663). But, the ALJ ultimately concluded at step five that there were other jobs in the national economy - like

ticket taker, document preparer, and surveillance systems monitor – that Plaintiff could perform and therefore, he was not disabled (Tr. 663-664).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

A. Listing 12.05C

At step three of the sequential evaluation process, the ALJ determined that Plaintiff's impairments did not meet Listing-level severity (Tr. 650). Plaintiff argues that

- 4 -

the ALJ committed reversible error because the record evidence established that he met all of the specified medical criteria of Listing 12.05C (Doc. 23 at 19-20).

At step three the ALJ is called upon to determine whether Plaintiff's impairments meet a Listing. See 20 C.F.R. §§ 404.1520, 416.920. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "Conditions contained in the [Listing] are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform [his] past relevant work or any other jobs." Richardson v. Apfel, 44 F. Supp. 2d 1264, 1265 (M.D. Fla. 1998) (citing Crayton v. Callahan, 120 F. 3d 1217, 1219 (11th Cir. 1997)).

The claimant bears the burden of proving that his impairment meets or is medically equivalent to a listed impairment. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); Hood v. Astrue, Civil No. SKG-08-2240, 2009 WL 4944838, at *5 (D. Md. Dec. 14, 2009). "When there is 'ample evidence in the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify 'the relevant listed impairments' and compare 'each of the listed criteria to the evidence of [the claimant's] symptoms.'" Hood, 2009 WL 4944838, at *5 (quoting Cook v. Heckler, 783 F. 2d 1168, 1172-73 (4th Cir. 1986)).

*1. Plaintiff Has Satisfied the Basic Requirements of Listing 12.05*

In order to satisfy Listing 12.05, Plaintiff must demonstrate that he has "(i) significantly subaverage general intellectual functioning[,] (ii) with deficits in adaptive functioning[,] (iii) that manifested [during the developmental period] before age twenty-two." Rodriguez v. Comm'r Soc. Sec., 633 F. App'x 770, 773 (M.D. Fla. 2015) (citing

- 5 -

Crayton, 120 F.3d 1217, 1219 (11th Cir. 1997)); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The ALJ determined that Plaintiff did not meet these basic requirements because the record lacked evidence to prove that Plaintiff had issues with adaptive functioning prior to age 22:

> Additionally, I am finding the requirements to meet listing 12.05 have not been met because the evidence submitted by the claimant does not prove the requirement of issues with adaptive functioning prior to age 22. To support this argument counsel submitted three one page exhibits.
>
> Exhibit 33E is a one page incomplete document that mentions the claimant being hyperactive and having destructive behaviors in school. However, this note also documents a dangerous household with a problem father and siblings who picked on him because he was viewed as "retarded" by his siblings. In his new setting he initially felt "picked on" but soon adapted with positive treatment. He was ready for foster care as his own family did not visit him and did not want him back. They rejected all attempts at counseling. A home was found and while there was an adjustment period he soon was participating and taking care of himself However, a conflict with another child resulted in the need to find a new home. At that point the claimant stated he wanted to go back with his family. The note continues to state that the family had made it clear they did not want him back and they did not perceive this would be positive for the claimant. The one page note ends. Exhibit 34E is not readable. The claimant was administered the Wechsler Scale for Children in September 1973. However, treatment notes from Watertown School District, are illegible and there were no scores noted. There was mere mention that the claimant was enrolled in special education classes but later transferred to the state adolescent unit for inpatient care due to behavioral problems (Exhibit 34E).
>
> A letter from Catholic Charities acknowledges much of the material in 33E. There are conclusory statements about emotional and behavioral difficulties, but there are no diagnostic studies or medical reports available to verify the conclusions (Exhibit 35E).
>
> School records at 15E contain the unreadable Wechsler Scale note above, physical and nurse notes which may have been the source of the conclusions made by Catholic Charities. These notes are incomplete and based on other records not provided.

> I find that these records are incomplete and are not sufficient to show the requirements for 12.05C. The claimant may have had ADHD, but his main issues were his home environment, with unsupportive family members. He was the brunt of both siblings and parents abuse. When removed, he was able to participate as a productive household member, until present with another situation involving being bullied.
>
> The claimant has worked successfully and there is no evidence of adaptive issues. During a recent January 2014 psychological examination (discussed in detail below) the claimant was assigned a global assessment of functioning (GAF) score of 65, which is not consistent with meeting any mental listing, but rather which is indicative of only mild functional impairment. (See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, pg. 34). The claimant left school early and was not well educated. However, he has functioned and continues to function.

(Tr. 652-53).

Contrary to the ALJ's findings, the record evidence depicts Plaintiff's childhood as more troublesome and impactful than one affected by simple bullying or "mild functional impairment." The ALJ refers first to exhibit 33E, which is more than just a "one page incomplete document," as she described (Tr. 652). It is a discharge summary from a psychiatric hospital where Plaintiff was a patient for more than a year and a half (from October 18, 1971 to June 21, 1973) beginning when he was 11 years old (Tr. 1124-1125). Plaintiff was admitted on referral from Dr. Bajjaly of the Jefferson County Mental Health Clinic, and diagnosed as having Adjustment Reaction of Childhood with Mild Mental Retardation (Tr. 1125). Plaintiff had been a patient of the Jefferson County Mental Health Clinic since 1967 (Id.). It is true that Plaintiff endured incessant bullying at home (often at the hands of his alcoholic father) and was regarded as "destructive and hyperactive" at school (Id.). However, the discharge summary also notes that at age two, Plaintiff had encephalitis, which resulted in brain damage (Id.). While a patient in the psychiatric hospital, Plaintiff had difficulty interacting with his peers, had a low frustration threshold,

and was aggressive and even ran away once (Id.). At one point Plaintiff was placed in foster care but that did not work out and he returned to the hospital in April 1973 (Id.). Attempts to place him in a different foster care home were unsuccessful and although Plaintiff wanted to return home to his family, his parents did not want him back (Id.). The author began to comment on the environment Plaintiff's family could potentially provide, but the report ends mid-sentence (Id.).

The ALJ dismissed Exhibit 34E as being unreadable, but I find that part of the exhibit is legible. On March 26, 2014, the Watertown City School District Administrative Offices provided a report detailing the results of the Wechsler Intelligence Scale for Children and Peabody Individual Achievement Test that was administered on September 10, 1973, when Plaintiff was 13 1/2 years old (Tr. 1126). According to the report, in November, 1970, a consultant evaluated Plaintiff and concluded that he was "a very slow, sluggish, dull child, who cannot keep up ... he is illiterate ... with some organic disturbances at high level ... He is multiply handicapped ... a simple schizophrenic ... totally impoverished ... His social environment is a disaster and he should be removed from the [illegible]" (Id.). Plaintiff was entered into special education classes after the assessment was made and was later admitted to the state psychiatric hospital on an in-patient basis, due to "poor progress at this placement" (Id.).

In Exhibit 35E, the Catholic Charities responded to Plaintiff's request for information from his records regarding his stint at St. Patrick's Children's Home in Watertown, New York (Tr. 1127). The letter states that Plaintiff was admitted to the children's home in 1969, at the age of 9, by Child Protective Services (Id.). The ALJ acknowledged that the synopsis of the record provided in the letter appeared to "acknowledge[ ] much of the material in 33E," but dismissed the content of the letter by stating that it contained unverified conclusions about Plaintiff's emotional and behavioral

difficulties (Tr. 652). I disagree. Contrary to the ALJ's characterization, the letter contains a recitation of facts from Plaintiff's record:

> The referral summary in the records indicates severe emotional and behavioral problems beginning as a pre-schooler. At age seven, it is reported, that you had encephalitis, after which you became even more hyperactive and distracted and destructive. During the next year and a half the summary indicates you received mental health counseling and it also reports that several unnamed tranquilizing medications were tried, with no effect. The record documents that you were in a special class in school for those years. All of this preceded your stay at the orphanage.
>
> During the brief time at St. Patrick's it is noted that you received special assistance at school for reading and speech deficits, poor work habits and problem behaviors.
>
> In January 1970 you were placed in a foster home.

(Id.).

When the evidence in Exhibits 33E, 34E, and 35E is properly characterized and considered, it is sufficient that a reasonable person would accept as adequate to support the conclusion that Plaintiff had deficits with adaptive functioning that manifested before age 22. Given the overwhelming evidence of Plaintiff's problems with adaptive functioning in his developmental years, and the ALJ's errors discussed above, I conclude that the ALJ's finding is not based on substantial evidence.

### 2. Plaintiff Has Satisfied the Specific Requirements of Subsection C

A claimant is presumptively disabled under subsection C if in addition to establishing all the basic requirements of Listing 12.05 he also establishes evidence of (i) a valid IQ score between 60 and 70, and (ii) a physical or other mental impairment that imposes an additional and significant work-related functional limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; Pettus v. Astrue, 226 F. App'x 946, 948 (11th Cir. 2007) (citing Crayton, 120 F.3d at 1219-1220); Rodriguez, 633 F. App'x at 773 (citing Lowery v.

Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)).

The ALJ made the following determination regarding Listing 12.05C:

> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. A medical expert was called to testify regarding the claimant's degenerative disc disease. The doctor opined that the claimant's spine disorders are not such that would preclude him from a reduced range of light work, therefore they are not "significant" work limitations. As noted later in this determination, the vocational expert identified jobs that the claimant can do within the restrictions posed. The claimant off and on worked after his alleged onset date. The fact that the claimant ultimately is being paid due to the inability to do his past work does not mean that he has an additional or significant work related issues. Instead, it means that the law requires him to he paid based on his age, his educational level, and his past work history.

(Tr. 651).

### a. *A Valid IQ Score Between 60 and 70*

The ALJ does not discuss Plaintiff's IQ scores as part of her subsection C analysis. Instead, she spends the bulk of her time explaining her conclusion that Plaintiff did not have a physical or other mental impairment that imposed significant work-related limitations on his functioning (Tr. 651). I find this to be error. The record is clear that Dr. Paul S. Suich assigned Plaintiff a valid IQ score of 67 (Tr. 410, 568-569). Based on this result and the Commissioner's acknowledge in her subsection B analysis that Plaintiff has a "full scale IQ of 67" (Tr. 651), I find as conclusive evidence that Plaintiff had a valid IQ score between 60 and 70.

### b. *Other Physical or Mental Impairment*

The ALJ determined that Plaintiff's back and spine disorders were not debilitating enough to preclude him from all work activity and therefore not debilitating enough to satisfy the requirements of 12.05C (Tr. 651-652). Plaintiff's argument is simple: the ALJ's

- 10 -

step two determination that Plaintiff suffered from the severe impairments of lumbar and cervical degenerative disc disease and borderline intellectual functioning necessarily satisfies the second requirement of Listing 12.05C (Doc. 23 at 23). I find this argument persuasive.

The introductory paragraph for the 12.00 series listings states that for consideration of 12.05C claims, the Commissioner "will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), a**s defined in §§ 404.1520(c) and 416.920(c)**." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (emphasis added). Clearly, it is the Commissioner's intention that the 12.05C other impairment analysis be evaluated under the same standard as the step two severe impairment analysis. See 65 FED. REG. 50,746 at 50,754 and 50,772 (Aug. 21, 2000) ("We always have intended the phrase [significant work-related limitation of function] to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c) ...."); see also Henderson v. Comm'r Soc. Sec., No. 2:13-cv-723-FtM-DNF, 2015 WL 1346822, at *4-5 (M.D. Fla. Mar. 24, 2015); Mosley v. Colvin, CV 314-071, 2015 WL 5877847, at *4 (S.D. Ga. Sept. 9, 2015); Brown v. Astrue, Civil Action No. 2:10cv498-WC, 2011 WL 1885328, at *5 n.7 (M.D. Ala. May 18, 2011); Carroll v. Astrue, Civil Action No. 1:08CV74-SRW, 2009 WL 1708073, at *1 n. 2 (M.D. Ala. June 17, 2009).

At step two of the sequential evaluation process, the ALJ determined that since Plaintiff's onset date of May 2, 2007 he has suffered from the following severe impairments: lumbar and cervical degenerative disc disease and borderline intellectual functioning (Tr. 650). The ALJ's conclusion that Plaintiff's impairments do not pose an additional and significant work-related limitation of function is not based on substantial evidence and is contradicted by the record evidence and the ALJ's own written findings.

For these reasons I respectfully recommend that the district judge reverse the ALJ's decision regarding Plaintiff's disability status prior to May 27, 2015 and remand the case for further administrative proceedings.

### B. Remaining Arguments

Because remand is required based upon Plaintiff's first argument, it is unnecessary to review his remaining objections to the ALJ's decision. <u>Freese v. Astrue</u>, No.8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. April 18, 2008) (citing <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)). "On remand, however, the Commissioner is reminded of the substantial body of Eleventh Circuit case law encompassing the issues that Plaintiff raises in [his] memorandum of law." <u>Id.</u>

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) The Commissioner's final decision be **REVERSED and REMANDED** for further proceedings consistent with the findings in this report.

(2) The Commissioner's favorable decision regarding Plaintiff's disability status *after* May 27, 2015 remain undisturbed.

(3) The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

(4) Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

(5) Plaintiff be directed that upon receipt of such notice, she shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 20, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record